# SUPREME COURT OF THE UNITED STATES

## JOHN MARSHALL, WARDEN *v.* OTIS LEE RODGERS

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–382.   Decided April 1, 2013

PER CURIAM.

Respondent Otis Lee Rodgers, challenging his state conviction, sought a writ of habeas corpus from the United States District Court for the Central District of California. He claimed the state courts violated his Sixth Amendment right to effective assistance of counsel by declining to appoint an attorney to assist in filing a motion for a new trial notwithstanding his three prior waivers of the right to counseled representation.  The District Court denied respondent's petition, and he appealed to the Court of Appeals for the Ninth Circuit, which granted habeas relief.  678 F. 3d 1149, 1163 (2012).  Because the Court of Appeals erred in concluding that respondent's claim is supported by "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U. S. C. §2254(d)(1), its judgment must be reversed.

I

In 2001, the State of California charged respondent with making criminal threats, assault with a firearm, and being a felon in possession of a firearm and ammunition. Before his arraignment, respondent executed a valid waiver of his Sixth Amendment right to counsel, electing to represent himself.  See *Faretta* v. *California*, 422 U. S. 806, 807 (1975).  By the time of his preliminary hearing, however, respondent changed his mind and retained counsel.  Then, two months later, he fired his lawyer and again waived his right to counsel.  Two months after that, respondent again changed his mind and asked the court to

appoint an attorney. The court did so. Shortly before trial, however, respondent for the third time surrendered his right to counsel. He proceeded to trial *pro se.* On June 27, 2003, the jury returned a verdict of guilty.

After the verdict was read, respondent asked the state trial court to provide an attorney to help him file a motion for a new trial. The trial judge deferred ruling on the motion to appoint counsel, and respondent later renewed the request in writing. Neither the oral nor the written motion included reasons in support of his request; and when offered a chance to supplement or explain his motion at a later hearing, respondent declined to do so. The trial court denied the request for counsel. Respondent's *pro se* motion for a new trial was likewise denied.

On direct review the California Court of Appeal affirmed respondent's convictions and sentence. As relevant here, it concluded that his history of vacillating between counseled and self-representation, the lack of support for his motion, his demonstrated competence in defending his case, and his insistence that he "'c[ould] do the motion [him]self'" but "'just need[ed] time to perfect it,'" App. to Pet. for Cert. 129–130, justified the trial court's denial of his post-trial request for counsel. The state appellate court also distinguished its decision from that of the Court of Appeals for the Ninth Circuit in *Menefield* v. *Borg*, 881 F. 2d 696 (1989), reasoning that the habeas petitioner in *Menefield* had stated reasons justifying his request for counsel, whereas respondent's request was unreasoned and unexplained. The state appellate court concluded that "[b]ecause the [trial] court was not given any reason to grant [respondent's] motion, we cannot find that the court abused its discretion in declining to do so." App. to Pet. for Cert. 130.

Having failed to obtain relief in state court, respondent filed a federal habeas petition, arguing that the California courts had violated his Sixth Amendment right to counsel

Per Curiam

by not providing an attorney to help with his new-trial motion. The District Court denied the petition but granted a certificate of appealability. The Court of Appeals reversed, holding that respondent's "Sixth Amendment right to counsel was violated when the trial court denied his timely request for representation for a new trial motion." 678 F. 3d, at 1163.

To reach the conclusion that respondent's right to counsel in these circumstances was clearly established by the Supreme Court of the United States, the Court of Appeals for the Ninth Circuit invoked certain Sixth Amendment precedents from its own earlier cases and from cases in other Circuits. From those precedents, the panel identified two relevant principles that it deemed to have been clearly established by this Court's cases: first, that a defendant's waiver of his right to trial counsel does not bar his later election to receive assistance of counsel at a later critical stage of the prosecution, absent proof by the State that the reappointment request was made in bad faith, see *id.,* at 1159–1162; and, second, that a new-trial motion is a critical stage, see *id.*, at 1156–1159. Combining these two propositions, the court held that respondent had a clearly established right to the reappointment of counsel for purposes of his new-trial motion, and that the California courts—which vest the trial judge with discretion to approve or deny such requests based on the totality of the circumstances, see *People* v. *Lawley*, 27 Cal. 4th 102, 147–151, 38 P. 3d 461, 493–495 (2002)—violated that right by refusing to order the reappointment of counsel. 678 F. 3d, at 1162–1163.

## II

The starting point for cases subject to §2254(d)(1) is to identify the "clearly established Federal law, as determined by the Supreme Court of the United States" that governs the habeas petitioner's claims. See *Williams* v.

*Taylor*, 529 U. S. 362, 412 (2000); *Knowles* v. *Mirzayance*, 556 U. S. 111, 122 (2009). As indicated above, the parties here dispute whether two principles of law are clearly established under this framework. One is whether, after a defendant's valid waiver of his right to trial counsel under *Faretta*, a post-trial, preappeal motion for a new trial is a critical stage of the prosecution. For purposes of analysis here, it will be assumed, without so holding, that it is.

The other disputed question is whether, after a defendant's valid waiver of counsel, a trial judge has discretion to deny the defendant's later request for reappointment of counsel. In resolving this question in respondent's favor, the Court of Appeals first concluded (correctly) that "the Supreme Court has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel" once he has validly waived it. 678 F. 3d, at 1159 (internal quotation marks omitted). It then (also correctly) recognized that the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since "a general standard" from this Court's cases can supply such law. *Yarborough* v. *Alvarado*, 541 U. S. 652, 664 (2004). The Court of Appeals erred, however, in its application of this latter proposition to the controlling issues here.

It is beyond dispute that "[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa* v. *Tovar*, 541 U. S. 77, 80–81 (2004); see *United States* v. *Cronic*, 466 U. S. 648, 653–654 (1984); *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963). It is just as well settled, however, that a defendant also has the right to "proceed *without* counsel when he voluntarily and intelligently elects to do so." *Faretta*, 422 U. S., at 807.

There can be some tension in these two principles. As the *Faretta* Court observed, "[t]here can be no blinking the fact that the right of an accused to conduct his own de-

fense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Id.,* at 832. California has resolved this tension by adopting the framework under review. Under that approach, trial judges are afforded discretion when considering postwaiver requests for counsel; their decisions on such requests must be based on the totality of the circumstances, "includ[ing] 'the quality of [the defendant's] representation of [himself], the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay [that] might reasonably be expected to follow the granting of such a motion.'" *Lawley*, *supra,* at 149, 38 P. 3d, at 494 (quoting *People* v. *Windham*, 19 Cal. 3d 121, 128, 560 P. 2d 1187, 1191–1192 (1977); final alteration in original). The state appellate court applied those rules to the case at bar, concluding that the totality of the circumstances—and especially the shifting nature of respondent's preferences, the unexplained nature of his motion, and his demonstrated capacity to handle the incidents of trial—supported the trial court's decision. App. to Pet. for Cert. 128–131.

The Court of Appeals, however, has resolved that tension differently in its own direct-review cases. It has adopted a "'strong presumption that a defendant's post-trial request for the assistance of an attorney should not be refused,'" 678 F. 3d, at 1160 (quoting *Robinson* v. *Ignacio*, 360 F. 3d 1044, 1058 (CA9 2004); emphasis deleted), as well as a default rule that, "'in the absence of extraordinary circumstances,' a defendant's post-trial revocation of his waiver should be allowed unless the government can show that the request is made 'for a bad faith purpose,'" *id.,* at 1058 (quoting *Menefield*, 881 F. 2d*,* at 701; emphasis deleted).

It is unnecessary for present purposes to judge the

merits of these two approaches or determine what rule the Sixth Amendment in fact establishes for postwaiver requests of appointment of counsel. All this case requires— and all the Court of Appeals was empowered to do under §2254(d)(1)—is to observe that, in light of the tension between the Sixth Amendment's guarantee of "the right to counsel at all critical stages of the criminal process," *Tovar*, *supra*, at 80–81, and its concurrent promise of "a constitutional right to proceed *without* counsel when [a criminal defendant] voluntarily and intelligently elects to do so," *Faretta*, *supra*, at 807, it cannot be said that California's approach is contrary to or an unreasonable application of the "general standard[s]" established by the Court's assistance-of-counsel cases. *Alvarado*, *supra*, at 664.

The Court of Appeals' contrary conclusion rested in part on the mistaken belief that circuit precedent may be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced. *Parker* v. *Matthews*, 567 U. S. ___, ___ (2012) (*per curiam*) (slip op., at 12–13) ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* [v. *Wainwright*, 477 U. S. 168 (1986)] bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here"); see 678 F. 3d, at 1155, 1157. The error in this approach is subtle, yet substantial. Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, see, *e.g., Tolliver* v. *Sheets*, 594 F. 3d 900, 916, n. 6 (CA6 2010) ("We are bound by prior Sixth Circuit determinations that a rule has been clearly established"); *Chambers* v. *McDaniel*, 549 F. 3d 1191, 1199 (CA9 2008), it may not canvass circuit decisions to determine whether a particular rule of law is

so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct. See *Parker, supra,* at ___ (slip op., at 12–13); *Renico* v. *Lett*, 559 U. S. 766, 778–779 (2010). The Court of Appeals failed to abide by that limitation here. Its resulting holding was erroneous and must be reversed.

## III

The Court expresses no view on the merits of the underlying Sixth Amendment principle the respondent urges. And it does not suggest or imply that the underlying issue, if presented on direct review, would be insubstantial. This opinion is instead confined to the determination that the conclusion of the California courts that there was no Sixth Amendment violation is not contrary to "clearly established Federal law, as determined by the Supreme Court of the United States." §2254(d)(1).

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the United States Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*